

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

v.  CRIMINAL NO. 3:18cr88DPJ-LRA

ARTHUR LAMAR ADAMS  18 U.S.C. § 1343
18 U.S.C. § 1344

**The United States Attorney charges:**

At all times relevant to this Information:

### INTRODUCTION

1. Defendant **ARTHUR LAMAR ADAMS ("ADAMS")** is a resident of Mississippi who was involved in the timber industry and whose primary place of business is in Madison, Mississippi.

2. In 2009, **ADAMS** formed and was the sole owner of Madison Timber Fund, LLC, a Mississippi Limited Liability Corporation. Madison Timber Fund, LLC, was administratively dissolved in 2017.

3. In 2011, **ADAMS** formed and was the sole owner of Madison Timber, LLC, a Mississippi Limited Liability Corporation. Madison Timber, LLC, was administratively dissolved in 2017.

4. In 2012, **ADAMS** formed and was the sole owner of Madison Timber Properties, LLC ("Madison Timber Properties"), a Mississippi Limited Liability Corporation based in Madison, Mississippi.

## THE SCHEME AND ARTIFICE TO DEFRAUD

5. Beginning at least as early as 2011 and continuing through April 2018, in the Northern Division of the Southern District of Mississippi and elsewhere, the defendant, **ARTHUR LAMAR ADAMS**, aided and abetted by others, did knowingly and intentionally devise a scheme and artifice to defraud investors by soliciting millions of dollars of funds under false pretenses, failing to use the investors' funds as promised, and misappropriating and converting investors' funds to **ADAMS'S** own benefit and the benefit of others without the knowledge or authorization of the investors.

6. Defendant **ADAMS** falsely and fraudulently represented to investors that Madison Timber Properties was in the business of buying timber rights from landowners and then selling the timber rights to lumber mills at a higher price. The object of the scheme was to cause persons to invest in loans that purportedly were for the purpose of financing such contracts for the purchase of timber rights to be sold to lumber mills. In fact, neither **ADAMS** nor Madison Timber Properties had such timber rights or contracts with lumber mills, except in only a few instances. In furtherance of the scheme and artifice to defraud, **ADAMS** falsely and fraudulently represented to investors that their money would be invested in the purchase of such timber rights, when defendant **ADAMS** then and there knew that the money would not be so invested.

7. In furtherance of the scheme and artifice to defraud, defendant **ADAMS** entered into investment contracts with investors, most often in the form of promissory notes on behalf of Madison Timber Properties. The loans typically guaranteed investors an interest rate of 12 to 13 percent, which was to be repaid to investors over the course of twelve to thirteen months. The

2

monthly payments due on these promissory notes were typically due on either the first or the fifteenth of the month.

8. In fact, this was a sophisticated Ponzi scheme. Instead of investing investors' money, **ADAMS** used the invested funds for his personal benefit and for purposes other than those represented to investors. During the scheme and artifice to defraud, defendant **ADAMS** fraudulently obtained well in excess of one hundred million dollars ($100,000,000) from more than 250 investors located in at least 14 different states.

9. In furtherance of the Ponzi scheme, **ADAMS** created false documents to lull investors into believing that their investments were secured by sufficient collateral from which they could recover all or part of their investment in the event that Madison Timber Properties defaulted on the loans. Specifically, **ADAMS** created false timber deeds purporting to be contracts conveying timber rights from landowners to Madison Timber Properties. **ADAMS** forged the signatures of landowners, whose names were obtained from timber maps. **ADAMS** also created false timber deeds purporting to convey those timber rights from Madison Timber Properties to the investors. In fact, Madison Timber Properties did not hold valid timber rights on the parcels of land described in the false timber deeds which **ADAMS** created. To further lull investors, **ADAMS** had many of the documents notarized to make the investments appear legitimate. To further conceal the scheme, **ADAMS** required the investors to agree not to record their timber deeds unless Madison Timber Properties defaulted on the loan agreement by failing to make a payment. In many instances, **ADAMS** also provided a "timber cruise summary" purporting to state the value of the timber located on a particular parcel of land. These "timber cruise summary" documents were also false and had been created by **ADAMS** to induce investors to give money to **ADAMS** under false or fraudulent pretenses.

10. Instead of using the money for the purpose of cutting timber, **ADAMS** used the proceeds for other fraudulent purposes and to further the scheme, including but not limited to making payments due and owing to other investors. For example, on November 21, 2017, the balance in the bank account of Madison Timber Properties at the First National Bank of Clarksdale, Mississippi, was $34,506.16. Madison Timber Properties then obtained six million dollars ($6,000,000) in investor funds via interstate wire transfer on November 27, 2017. At the direction of **ADAMS**, on November 28, 2017, First National Bank of Clarksdale wired in interstate commerce two million dollars ($2,000,000) from the Madison Timber Properties account at that bank to the Madison Timber Properties account at Riverhills Bank. The following day, on November 29, 2017, at the direction of **ADAMS**, First National Bank of Clarksdale wired in interstate commerce three million dollars ($3,000,000) from the Madison Timber Properties account at that bank to the Madison Timber Properties account at Riverhills Bank. Unknown to the investors, these investor funds were then used, as directed by **ADAMS**, primarily to make payments to other investors that were due on December 1, 2017, under previously existing promissory notes. At other times, **ADAMS** had less than $1,000 in the accounts of Madison Timber and was only able to perpetuate the scheme and artifice to defraud by fraudulently obtaining additional investor funds or by obtaining loans from banks.

11. It was further part of the scheme and artifice to defraud that defendant **ADAMS** paid commissions to recruiters who referred investors to **ADAMS**. The commissions were paid from investors' money. For example, **ADAMS** paid one recruiter approximately two million four hundred forty-five thousand four hundred and forty-nine dollars ($2,445,449) in commissions in 2017 alone. **ADAMS** paid another recruiter approximately one million six

hundred twenty-eight thousand one hundred dollars ($1,628,100) in commissions in 2017. Many recruiters also invested their own money in **ADAMS'S** fraudulent scheme.

12.     It was further part of the scheme and artifice to defraud that defendant **ADAMS** lulled and persuaded investors to maintain their investments and to invest additional funds by making payments to some investors by way of post-dated checks.

13.     It was further part of the scheme and artifice to defraud that defendant **ADAMS** lulled and persuaded investors to maintain their investments and to invest additional funds by making payments to some investors via interstate wire transfers of funds.

14.     It was further part of the scheme and artifice to defraud that defendant **ADAMS** received investor funds via check and interstate wire transfer into the Madison Timber Properties bank accounts and then converted the funds to his own personal use, contrary to the representations made by defendant **ADAMS** to the investors.

15.     It was further part of the scheme and artifice that defendant **ADAMS** diverted and used the investors' funds for his own benefit, including personal expenses unrelated to any investment in the purchase or sale of timber and also including investments in real property in his own name and for his own benefit rather than the benefit of his investors.

16.     It was further part of the scheme and artifice to defraud that **ADAMS**, and others aiding and abetting him, took actions to conceal the true nature of the fraudulent scheme. After a bank raised questions about the nature of the business of Madison Timber Properties and the source of its income, **ADAMS** set up additional bank accounts and directed investors to write checks and to wire funds to the new bank accounts. To conceal the true nature of the fraudulent scheme and to conceal the source of the funds, **ADAMS** and others directed by him would then

transfer the investor funds to an account at Riverhills bank that was then used to make payments to investors and for other purposes as directed by **ADAMS.**

17. It was part of the scheme and artifice to defraud that defendant **ADAMS** intentionally failed to disclose to investors that he was using their money to pay earlier investors and that he was using their money for his own personal purposes rather than for business purposes. It was further part of the scheme and artifice to defraud that defendant **ADAMS** lulled and persuaded investors to maintain their investments and to invest additional funds by timely paying investors with money fraudulently obtained by **ADAMS** from other investors.

18. It was part of the scheme and artifice to defraud that defendant **ADAMS** knew and intended that his false and fraudulent pretenses, representations, and promises would induce investors to entrust money to him and would cause them to suffer financial losses while he benefited from the fraudulent scheme.

## COUNTS 1 - 2

The United States Attorney realleges and incorporates by reference the allegations set forth in paragraphs 1 through 18.

Beginning at least as early as 2011 and continuing through April 2018, in Madison County, in the Northern Division of the Southern District of Mississippi and elsewhere, defendant **ADAMS**, aided and abetted by others, unlawfully, willfully, and knowingly devised and intended to devise a scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations and promises. In executing this scheme and artifice to defraud, **ADAMS** knowingly and willfully obtained money by means of materially false and fraudulent representations, pretenses and promises, and in furtherance thereof, did cause electronic wire communications to be transmitted in interstate commerce for the purpose of

executing the scheme, and attempting to do so, in that **ADAMS** initiated fraudulent transactions transferring funds through the Federal Reserve System from one bank to another, as follows, each item constituting a separate count herein:

| COUNT | DATE OF WIRE | DESCRIPTION |
|---|---|---|
| 1 | November 28, 2017 | Interstate wire transfer of funds in the amount of $2,000,000.00 from the account of Madison Timber Properties, LLC at First National Bank in Clarksdale, Mississippi, through the Federal Reserve Banks in St. Louis, Missouri, and in Atlanta, Georgia, to First National Bankers Bank to the account of Madison Timber Properties at Riverhills Bank. |
| 2 | November 29, 2017 | Interstate wire transfer of funds in the amount of $3,000,000.00 from the account of Madison Timber Properties, LLC at First National Bank in Clarksdale, Mississippi, through the Federal Reserve Banks in St. Louis, Missouri, and in Atlanta, Georgia, to First National Bankers Bank to the account of Madison Timber Properties at Riverhills Bank. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

COUNT 3

The United States Attorney realleges and incorporates by reference the allegations set forth in paragraphs 1 through 18.

That sometime in October 2016, in Madison County in the Northern Division of the Southern District of Mississippi and elsewhere, defendant **ADAMS**, knowingly devised and executed a scheme and artifice to defraud and to obtain money in the amount of approximately $950,520 under the custody and control of First National Bank of Clarksdale in Clarksdale, Mississippi, the deposits of which were then insured by the Federal Deposit Insurance Corporation, by means of materially false and fraudulent pretenses, representations and promises, including by presenting false or fraudulent documents that included false and forged

timber contracts for the purchase and sale of timber in Yazoo County, Mississippi, all in violation of Title 18, United States Code, Section 1344.

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE

Pursuant to Title 18, United States Code, Section 981(a)(1)(c), and Title 28, United States Code, Section 2461, the United States gives notice to the Defendant that upon conviction of Counts One or Two of this Indictment, all property, real or personal, which constitutes or is derived from proceeds traceable to the violation, is subject to forfeiture. Pursuant to Title 18, United States Code, Section 982(a)(2), the United States gives notice to the Defendant that upon conviction of Count Three of this Indictment, any property constituting, or derived from, proceeds the Defendant obtained, directly or indirectly, as a result of the violation, is subject to forfeiture.

The Defendant is notified that in the event that property subject to forfeiture, as a result of any act or omission of the Defendant,

- (i) cannot be located upon the exercise of due diligence;
- (ii) has been transferred or sold to, or deposited with, a third party;
- (iii) has been placed beyond the jurisdiction of the court;
- (iv) has been substantially diminished in value; or
- (v) has been commingled with other property that cannot be divided without difficulty;

then the United States will seek to forfeit any other property of the Defendant up to the total value of the property subject to forfeiture pursuant to Title 21, United States Code, Section 853(p), as incorporated by reference in Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c).

D. MICHAEL HURST, JR.
United States Attorney